UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**TYRONE DORN,**
    **Plaintiff,**

    vs.        02-1348

**KEVIN DELONG, K. ROBINSON,**
**JAMES SCHOMIG, DR. A. FUNK,**
**DR. LAWRENCE NYU, JOYCE FRIEL,**
**BENNY DALLAS, LEORA HARRY, and**
**DONALD SNYDER,**
    **Defendants.**

## ORDER

    Before the court are the defendants, Benny Dallas, Kent Robinson and Kevin DeLong's summary judgment motion pursuant to Fed. R. Civ. Pro. Rule 56(b), d/e 50, and the plaintiff's response, d/e 59, and the defendants' reply, d/e 60.

## Background

    The plaintiff, Tyrone Dorn, brings this suit pursuant to 42 U.S.C. §1983 for alleged violations of his constitutional rights. The plaintiff claims that while he was incarcerated at Pontiac Correctional Center the defendants violated his United States Constitutional rights. Specifically, the plaintiff claims that on October 26, 2002, he was scheduled to appear before the Adjustment Committee to hear a disciplinary report. Lt. DeLong and Correctional Officer Robinson arrived at the plaintiff's cell. Robinson opened the hatch on the door to the plaintiff's cell. DeLong placed a pair of handcuffs on the plaintiff. Robinson opened the cell door. DeLong placed some leg restraints on the plaintiff. The plaintiff knelt down on the floor. He asked for assistant to get up from the floor. DeLong grabbed the back top part of the plaintiff's jumpsuit and lifted up on it with force. The buttons on the jumpsuit began to choke the plaintiff. Therefore, the plaintiff pulled away from DeLong's grip. In response, DeLong rammed the plaintiff into the walls and punched the plaintiff in the bottom lip which began to bleed. Then DeLong repeatedly pushed the plaintiff's head into the walls. DeLong then declared that the plaintiff was not going to the Adjustment Committee hearing. The plaintiff responded "I am going." DeLong then threw the plaintiff to the floor and repeatedly kneed the plaintiff in his back. Then De:Long placed his knee in the plaintiff's back with such force that it immediately sent sharp pain into the plaintiff's back area.

    DeLong ordered Robinson to remove the leg restraints. Robinson complied. Robinson and DeLong "stood plaintiff up and pulled plaintiff to the cell door." Robinson and DeLong both denied the plaintiff's request to see a medical technician. The plaintiff claims Robinson assisted

DeLong in "an extreme amount of unnecessary physical force" by helping DeLong hold the plaintiff's legs down and grabbing the plaintiff's arms causing bruises on the plaintiff.

That same day, the plaintiff was sent to the emergency room in the Health Care Unit for medical treatment for injuries sustained in the assault. The plaintiff claims that while he waited for medical treatment, Dr. Lawrence Nyu was on the phone setting up a blind date. However, Joyce Friel, a nurse, provided medical care for the plaintiff which included a blood pressure and temperature check and provided Tylenol to the plaintiff. The plaintiff claims Friel refused to treat his injuries. The plaintiff informed Dr. Nyu who was still on the phone arranging his blind date. In response, Dr. Nyu told the plaintiff to shut up and then told a correctional officer to get the plaintiff out of the Health Care Unit. Dr. Nyu refused to treat the plaintiff's injuries. The plaintiff claims Friel falsified his medical records to cover up the misconduct of "those correctional employees [DeLong and Robinson]." Further, the plaintiff claims Dr. Nyu told him he would not give the plaintiff medical treatment. The plaintiff claims Dr. Nyu did this to cover up the injuries the plaintiff sustained as a result of the excessive force by DeLong and Robinson. The plaintiff claims Friel and Dr. Nyu turned a blind eye to his serious medical needs, although they knew the plaintiff was suffering from injuries and extremely "bad" pain.

On or about October 31, 2000, the plaintiff filed an emergency grievance with the chief administrative officer, James Schomig regarding the October 26, 2000 excessive force and "inadequate" medical care. Schomig denied the grievance as an emergency, but forwarded it to the Health Care Unit. On or about November 7, 2000, the plaintiff was taken to the Health Care Unit so that his medical issues could be addressed. The plaintiff told Dr. Funk about the events of October 26, 2000 and advised Dr. Funk of the plaintiff's injuries. Further, the plaintiff advised Dr. Funk that he was still suffering from the injuries. The plaintiff claims Dr. Funk refused to provide medical treatment for the plaintiff's October 26, 2000 injuries. Further, the plaintiff claims that although Dr. Funk did not give the plaintiff any medication, Dr. Funk falsely advised the grievance officer that he provided the plaintiff with pain medication. The plaintiff claims Dr. Funk was deliberately indifferent to his serious medical needs.

Further, the plaintiff claims that on October 26, 2000, DeLong denied him due process and "equal protection of the law" when he wrote a false disciplinary ticket against the plaintiff in retaliation of the plaintiff reporting that DeLong and Robinson had assaulted him. On or about November 1, 2000, the plaintiff attended the adjustment committee hearing. Prior to the hearing, the plaintiff claims he requested two witnesses and further he claims that Dallas, the Adjustment Committee chairperson failed to provide the plaintiff with a 24 hour notice of the charges and evidence. Dallas found the plaintiff guilty of all the charges, except one. The plaintiff's grievance regarding the finding of guilty were denied. The plaintiff claims Leora Harry turned a blind eye to the plaintiff's complaint. Further, the plaintiff claims Donald Snyder refused to acknowledge the plaintiff's complaint of staff misconduct and deliberate indifference to his serious medical needs. The plaintiff claims Snyder turned a blind eye to his complaints.

On February 28, 2005, this court granted various defendants' motions to dismiss and conducted a 1915 review. Further, the court held that the plaintiff proceed on his claim that

2

defendants DeLong and Robinson violated his rights under the Eighth Amendment when they used excessive force against him while preparing the plaintiff for movement from his cell.

## Summary Judgment Motion

In their summary judgment motion, the defendants contend that de minimus use of force is one that does not reach the level of a constitutional violation. The defendants argue that any force that may have been used by the defendants was de minimus in nature and, as such, the plaintiff's complaint should be dismissed. Further, the defendants state that it is unclear whether defendant Dallas was intended by the court to still be a party to this cause of action. Defendants state that to the extent that the Court did intend for defendant Dallas to still be a party to this cause of action, the plaintiff contends defendant Dallas denied him proper due process during the adjustment committee hearing of the ticket related to the above-mentioned incident. Defendants state that an inmate is guaranteed due process according to the Supreme Court's guideline in Wolff when an inmate's liberty interest has been affected and that the plaintiff was afforded proper due process at the above-mentioned adjustment committee hearing, thus, his complaint should be dismissed as it pertains to defendant Dallas.

The defendants' final argument is that the plaintiff's 1983 claims are barred by *Heck*. The defendants claim that in this case the plaintiff lost six months good conduct credits for the incident in question. See d/e 51, Exhibit F. The plaintiff does not dispute this fact. The defendants argue that in order to proceed under 42 U.S.C. §1983 for relief from harm caused by alleged violations of constitutional rights leading to wrongful conviction or imprisonment, a plaintiff must first show that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994). This rule applies to prison disciplinary proceedings as well. *See Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584(1997).

The defendants are correct. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). Prisoners "challeng[ing] the fact or duration of their confinement and seek[ing] immediate or speedier release" (such as the restoration of good time credits) must pursue their challenge under the federal habeas statute, not § 1983. *DeWalt v. Carter*, 224 F.3d 607, 614 (7th Cir. 2000), *citing Preiser*, 411 U.S. at 489-90. Additionally, a suit for damages under § 1983 that challenges an underlying conviction or sentence, or challenges "actions whose unlawfulness would render a conviction or sentence invalid," does not accrue until that conviction or sentence has been invalidated.[1] *Heck v. Humphrey*, 512 U.S. 477, 484-487 (1994). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended this

---

[1] The underlying conviction or sentence is invalidated if it is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. Section 2254." *Heck v. Humphrey*, 512 U.S. at 486-487.

3

ruling to include § 1983 suits for damages "challenging the loss of good time credits in prison disciplinary actions (when the fact or duration of confinement was implicated)" even if the plaintiff did not seek a restoration of good time. *DeWalt v. Carter*, 224 F.3d 607, 615 (7th Cir. 1999), *citing Edwards v. Balisok,* 520 U.S. at 648. Therefore, claims that "necessarily impl[y] the invalidity of the punishment imposed (i.e., loss of good time credits) . . . [are] not cognizable under § 1983" until the prison disciplinary decision has been invalidated. *Id*

In this case, the prison disciplinary decision has not been invalidated and the plaintiff's claims imply the invalidity of the punishment imposed. As a result, the plaintiff's lawsuit must be dismissed, without prejudice. The events that led to the plaintiff's loss of good conduct credit are in direct conflict with the plaintiff's claim that he was the victim of excessive force. *See plaintiff's complaint*, count 1, and defendants' exhibits E and F, d/e 51. Therefore, the plaintiff's remaining claims are dismissed. The plaintiff claim that the defendants used excessive force against him is dismissed. As a result, his claim against Dallas must also be dismissed because a finding that Dallas denied the plaintiff due process would question the underlying discipline.

**It is therefore ordered:**

1. **The defendants' summary judgment motion is denied, d/e 50. However, based on the foregoing, the plaintiff's lawsuit is dismissed, without prejudice, pursuant to 28 U.S.C. §1915A;** *Heck v. Humphrey***, 512 U.S. 477, 484-487 (1994); and** *Edwards v. Balisok***, 520 U.S. 641 (1997).**

2. **This case is terminated in its entirety and any remaining matters are rendered moot.**

3. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.** *See* **Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $255.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

**Enter this 3rd day of March 2006.**

                                      s\Harold A. Baker
                                _____
                                    **HAROLD A. BAKER**
                              **UNITED STATES DISTRICT JUDGE**